## In re SOUTH COAST CO.

### No. 5257.

District Court, E. D. Louisiana, New Orleans Division.

Dec. 8, 1937.

Miller, Bloch & Martin and John D. Miller, all of New Orleans, La., for petitioners.

Robert Weinstein, Asst. U. S. Atty., of New Orleans, La., for the United States.

DAWKINS, District Judge.

This was a proceeding under section 77B of the Bankruptcy Law, 11 U.S.C.A. § 207, for the reorganization of the debtor, the South Coast Company. The petition for reorganization was approved April 29, 1935, and subsequently the Commissioner of Internal Revenue filed a claim for deficiency in the payment of taxes by the debtor for the fiscal years ending January 31, 1934, and January 31, 1935, respectively. The court required the trustees of the debtor in reorganization to deposit in bank the sum of $26,095.70, to cover whatever sum might be determined as due the government.

It is alleged in the answer and stipulated as admitted in the note of evidence that on July 13, 1935, there was transmitted to the collector of internal revenue at New Orleans, La., by the internal revenue agent in charge at New Orleans, a copy of report to the Commissioner of Internal Revenue dated July 12, 1935, recommending the assessment of additional income taxes for the fiscal years ended January 31, 1934, and January 31, 1935, totalling $26,095.90. On July 15, 1935, without awaiting formal assessment by the Commissioner, under the regulations of the Treasury Department and section 274(a) of the Revenue Act 1934, 26 U.S.C.A. § 274(a), the collector of internal revenue at New Orleans filed an amended proof of claim with the trustees of the South Coast Company in Reorganization. The trustees acknowledged receipt of the amended claim on July 15, 1935. This amended proof of claim provided for interest at the rate of 6 per cent. per annum from due date of the return for the respective fiscal years involved.

"Your defendant further avers that on August 12, 1935, the Commissioner's August, 1935, special No. 1 list, assessing the additional taxes recommended by the internal revenue agent in his report of July 13, 1935, a copy of which report was mailed to the trustees of the South Coast Company on July 13, 1935, was received in the office of the collector of internal revenue at New Orleans, La. Notice and demand for payment was mailed to the trustees of the South Coast Company in Reorganization on August 13, 1935.

"The trustees of the South Coast Company in Reorganization protested to the internal revenue agent in charge at New Orleans, La., on the ground that the taxes were excessive and this protest was received by the agent in charge on September 20, 1935. As a result of this protest, the agent in charge at New Orleans, La., made a re-examination and found the additional tax liability for the fiscal years 1934 and 1935 to be $22,003.36, plus interest as provided by law. On October 3, 1935, Carl F. Dahlberg, one of the trustees, agreed to a reassessment in the sum of $22,003.36, plus interest, as a result of the re-examination made by the internal revenue agent in charge at New Orleans, La.; and there was forwarded to the agent in charge a signed waiver of re-

strictions on assessment and collection of deficiency in tax for the fiscal years ended January 31, 1934, and January 31, 1935, on Treasury Department Form No. 870. On October 9, 1935. The trustees of the South Coast Company in Reorganization were formally notified by the internal revenue agent in charge of the result of the re-examination, and a copy of said re-examination report was furnished on that date to the said trustees.

"Your defendant further avers that certificates of overassessment, dated December 3, 1935, based on the aforesaid re-examination report, were promptly mailed by the Commissioner of Internal Revenue to the trustees of the South Coast Company in Reorganization. Notwithstanding the knowledge that the trustees had on or about December 4, 1935, together with the prior knowledge of the facts hereinabove outlined, no request was made to the Court by the trustees to order payment to the United States of America until January 23, 1937."

On January 16, 1937, application was made to this court and an order was signed directing the trustees to pay the government the sum of $23,000.17, the agreed deficiency, which included both principal and interest to August 12, 1935, and that sum was paid on January 23, 1937. The question of whether interest was due on this amount from August 13, 1935, was left for subsequent determination by the court.

The contention of the trustees is that they had the money put aside under the order referred to; that they were ready and willing to pay at all times; that they endeavored to obtain from the collector's office in New Orleans the correct amount due within a few days after receipt of certificates of overassessment, but were unable to do so, notwithstanding their requests therefor; and that, as soon as the district attorney representing the collector notified them of the amount demanded, application was made to the court for payment and payment was made. On the other hand, the defendant contends that the trustees knew what was due from the date of the receipt of the overassessment certificates on December 4, 1935, the basis of the settlement having been agreed on, and could have at any time applied to the court for authority to make payment; which was not done, and hence the debtor was due to pay interest upon the said sum of $23,000.17, from August 13, 1935, to January 23, 1937.

Under ordinary circumstances, these taxes draw interest from the date they are due at 6 per cent., and the duty is upon the taxpayer to have them determined and to pay them. However, where, as here, the debtor was willing and ready to pay, had the funds set aside for that purpose, and was only awaiting advice from the collector as to the amount, to be determined by the practices of the Department in calculating interest, etc., and that fact was made known to the agents of the government, it would be inequitable to require payment of the interest simply because of the oversight or negligence of the Revenue Department in failing to take action. The evidence offered by the trustees is positive and direct to the point that a week after December 4, 1935, a representative of the trustees, in the person of a member of a well-known firm of accountants, which had handled tax matters of this kind for them regularly, applied to the agent in charge of this claim in the collector's office for correct information as to the amount due, figured according to the government's method of determining it, and was advised by that agent that he could not furnish it until further advice was received from the Commissioner's office in Washington. This is corroborated by the testimony of the auditor of the debtor, who says he talked to the same agent of the collector's office about the matter in the summer of 1936, with like result. On the other hand, this agent's testimony is equivocal and amounts in effect to the statement that he does not remember the said requests having been made. He admits that final receipt could not be given without approval from Washington, though saying he would have taken the money, if offered. This appears to have been due to the fact that the debtor was going through reorganization, and, once the claim was finally settled and the funds on deposit were disbursed by the court, nothing would remain of the assets of the former corporation out of which anything could be realized. For the same reason, that is, the desire to wind up the affairs of the debtor, the trustees were desirous of having the matter conclusively settled. In these circumstances, I think it was the duty of the government to have taken the initiative in bringing it to a conclusion, and that the trustees should not be held liable for the payment of interest beyond the 1st of January, 1936. In other words, I think they undoubtedly owed interest

from August 13th to December 4th, the date when the overassessments were received; the first request for the correct amount due was not made until about a week later, and from that time to January 1st following was a reasonable period in which the agents of the government could have put the matter in· shape and informed the trustees they were ready to receive final payment. American Propeller Co. v. United States, 300 U.S. 475, 57 S.Ct. 521, 81 L.Ed. 751.

Proper decree should be presented.