Sam SILVER and Mary Silver, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 8055.

United States District Court
N. D. New York.

Jan. 9, 1962.

Rubin & Levey, Rochester, N. Y., for plaintiffs.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., for defendant, R. Michael Duncan, Atty., Dept. of Justice, Washington, D. C., of counsel, Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Jerome Fink, R. Michael Duncan, Attys., Dept. of Justice, Washington, D. C., on the brief.

BRENNAN, Chief Judge.

The trial of this non-jury tax refund case leaves two questions for decision. (1) The legality of the assessment and collection of interest upon the amount of a jeopardy tax assessment which included an item of interest computed to the date

of such assessment. The collection of interest upon interest is the crux of this question. (2) The legal propriety of the assessment and collection of interest upon a part of the tax unpaid after the date when the taxpayers' claim that a partial payment of said tax was made available to the taxing authority.

No question is raised as to the court's jurisdiction or to the preliminary requirements therefor. The facts are not essentially disputed and are submitted in the form of a stipulation, exhibits and brief oral evidence which are summarized below.

In 1953 the Commissioner of Internal Revenue made jeopardy assessments against the plaintiff taxpayers on account of income tax deficiencies for the years 1944–1946 and 1948–1951 inclusive. Such assessments amounted in their total to about $173,000. and included items of interest computed upon the tax for the years involved from the due date of the tax to the date of the assessment. The required notices of the assessments were given to plaintiffs and they timely filed a petition for a redetermination of the deficiencies involved. The matter was submitted to the Tax Court in April 1956 and a decision was received in September 1957 which redetermined plaintiffs' tax liability in the amount of about $120,000. The amount due has been paid in full.

During the pertinent times involved, the taxpayers possessed a substantial financial investment in the Arizona Harness Racing Association. This investment was represented by stock and notes of the corporation. The assets of the Association were sold and payment therefor was made in installments to Louis Rosenzweig, an attorney of Rochester, who was acting as its secretary and principal disbursing officer. As such installment payments were received, they were credited upon the books of the Association in proportion to financial interest of the investors, including the taxpayers. The sums thus held were payable through the action of Mr. Rosenzweig upon the surrender to him of notes held by the investors in an amount equal to the payment to be made. The stock held by the investors was apparently considered as worthless.

Shortly after the making of the jeopardy assessment, above referred to and based thereon, notice of the lien and levy of the Bureau of Internal Revenue was served upon the Association which in effect prevented the payment to taxpayers of their share of the installment purchase payments. Such share was then set apart upon the books of the Association as a credit due them. As per a conference with the Director and the taxpayers, their stock and notes were held in escrow by their attorney to be surrendered to Rosenzweig as payment was made to the Bureau from the moneys held for their account. Pursuant to the above arrangement, notes were surrendered to Rosenzweig and payment made to the Director by the Association of $37,157.10 to apply upon taxpayers' indebtedness. This transaction occurred November 19, 1954 while the Tax Court action was pending and in accordance with an agreement with the Director. It is plain from the above and the subsequent action referred to below that the taxpayers disputed the amount of the jeopardy assessment but considered that a substantial amount thereof was due and owing which was the ultimate decision of the Tax Court. The above payment was of benefit to both the Government and the taxpayers in that the Government obtained the use of the money and interest ceased to accumulate against the taxpayers upon the amount paid.

On May 1, 1956 approximately $140,-000. was held by the Association for the taxpayers, on account of payments made as outlined above. By letter to the District Director, dated May 1, 1956, plaintiffs' counsel wrote in part as follows:

"Mr. Silver has authorized me to request that you now request Mr. Rosenzweig to turn over to your office the sum of $50,000.00, to apply on account of this tax liability and interest. When you have received this money, we shall advise you con-

cerning the manner in which we would prefer to have it allocated.

"Would you please make the necessary arrangements to permit Mr. Rosenzweig to turn these funds over to you, and advise me when this has been done."

Receipt of the above letter was acknowledged under date of May 7, 1956 and counsel was advised that the request was receiving consideration. No further reply was received until July 24 when the Director wrote counsel in part as follows:

"We have just been notified that the criminal aspect of this case has been adjudicated and closed, and to proceed with the collection of the civil tax liability. Computation of said liability has been made and found to be the sum of $135,804.21 assessed balance, plus $28,974.14 accrued interest to July 31, 1956, totalling the sum of $164,778.35.

"All funds held by you and/or the Arizona Harness Racing Association, up to the above mentioned amount, should now be turned over to this office as provided by levies and copies of liens previously served upon you. Any remittance should be in the form of certified funds payable to 'Internal Revenue Service' and forwarded to the attention of the undersigned".

Again no further action was taken either by the Director or plaintiffs' counsel until January 1957 when the Director at Syracuse requested an investigation to be made by an agent stationed at the Rochester office. The agent contacted plaintiffs' attorney but their conferences resulted in no conclusive action. The agent made no demand for payment of an amount less than the full amount claimed under the assessment as computed. Counsel made no direct offer of a partial payment.

It is evident however that the subject of the acceptance by the agent of less than the full amount was discussed because of January 21, 1957 counsel wrote the Director in substance requesting that the agent be authorized to "accept $75,-000. on account, or whatever amount my client tenders. * * * ". Receipt of that letter was acknowledged by the Director under date of January 23, 1957, advising that a collection officer would contact counsel with reference thereto. About two weeks later, under date of February 11, counsel advised the agent at Rochester that as a result of the conference, his client was investigating the feasibility of posting a bond instead of making payment. The letter concluded in the following language "and the taxpayer has accordingly instructed me not to turn over the notes at this time". The substance of the above communication was substantially restated in counsel's letter to the agent of March 19, 1957. The matter apparenty was allowed to remain in status quo until a "final demand" for payment was served upon the taxpayers, the ultimate result of which was a conference held on June 20, 1957 when the Director agreed to the acceptance of $75,000. to be paid for the benefit of the taxpayers according to the procedure outlined above and further agreed to withhold further collection activity until the decision of the Tax Court which was received in September 1957. The sum of $75,000. was paid on June 27, 1957. Thereafter and on April 30, 1958, the balance remaining unpaid in accordance with the Tax Court decision was paid by the taxpayers.

■ Plaintiffs' first contention that the action of the authorities of the Bureau of Internal Revenue in computing interest upon the unpaid yearly tax deficiency and including same as an item making up the jeopardy assessment and thereafter computing interest upon the face amount ultimately found to be due under such assessment constitutes the imposition of interest upon interest may be quickly disposed of. The defendant does not dispute that such action results in the imposition and collection of interest upon interest, as above referred to, but contends that same is justified and

in fact commanded by the language of the statute.

The legal question has been so directly passed upon in reported cases that the discussion of same would seem to be unnecessary. The plain language of Sections 292(a) and 294(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 292(a), 294(b), is sufficient authority to conclude that the exaction of interest in this case was entirely legal and proper. This court borrows the following statement taken from Ginsburg v. U. S., 1 Cir., 278 F.2d 470 in reaching the conclusion that the first claim or cause of action of plaintiffs' complaint must be dismissed. "A party on whom there has been a jeopardy assessment, but who has posted no bond, is charged thereafter with interest upon interest from the date of notice and demand by the collector as the result of sections 292(a) and 294(b), combined."

Plaintiffs appear to agree that the above decision together with the decisions in United States v. Glasser, 287 F.2d 433; Ingannamorte v. United States, D.C., 189 F.Supp. 341; Grimsley v. Patterson, D.C., 183 F.Supp. 729 and Brinck v. United States, D.C., 173 F. Supp. 286 constitute the weight of authority upon the question involved. They urge however that the decision in Crolich v. United States, 144 F.Supp. 109 holds to the contrary and that same should be followed in this circuit where the question has apparently not been directly passed upon. The difficulty with the Crolich decision is that it seems to have overlooked the provisions of Section 294 (b). Neither does it discuss the amendment in the 1954 Internal Revenue Code which affected a change in the existing law and confirms the construction and application of the statutes involved in the decisions relied upon by the Government which are highly persuasive and will be followed here.

The propriety of the computation and collection of interest upon the proffered payment of $50,000. on May 1, 1956 is not so easily determined. Preliminary contentions, which involve factual findings must first be disposed of.

The defendant contends that the offer of May 1, 1956 was burdened with the implied condition that its acceptance include an agreement that further action to collect the balance remaining unpaid upon the assessment be withheld until the decision of the Tax Court was made known. The contention is based on surmise rather than evidence. Counsel might well have hoped that the payment offered would warrant a lenient attitude by the creditor as to the well secured balance. The payment made in 1954 embodied no such agreement or condition and the record discloses no evidence warranting a finding that the offer of May 1, 1956 was other than unconditional.

It is next urged that since payment could not be made without the surrender to the Association by counsel of notes which equalled the amount of the payment, that an obstacle existed which must first be removed before the Bureau could obtain the funds. The contention is correct but the obstacle was theoretical, not material or obstructive to the Bureau's requested action. The requirement as to the surrender of the notes was between counsel and the Association. All interested parties understood that the notes must be surrendered at the time of payment. To surrender such notes before payment was authorized would violate the understanding. It cannot be assumed that counsel made an offer to pay on the one hand and withheld the doing of a ministerial act which would make the offer ineffective. The surrender of the notes was an act to be performed just as was the drawing and execution of the payment check. The matter remained in the above status until sometime prior to February 11, 1957 when counsel was instructed not to turn over the notes "at this time".

It is found and concluded that the offer of May 1, 1956 was unconditional, that it was rejected by the letter of July 24, 1956 and remained as a valid and continuing offer until February 1, 1957.

Few reported precedents are available as guides to the decision which must be made here. A consideration of the problem may well start with reference to the provision of Section 294(b) of the Internal Revenue Code of 1939 which provides that interest shall be collected upon an unpaid tax deficiency from the date of demand "until it is paid". This provision of the statute would seem to eliminate the exercise of the court's discretion which is available in many equity cases. On the other hand, it has long been recognized that interest is never allowed where by the act of the creditor payment of a debt has been prevented. Bowman v. Wilson, 8 Cir., 12 F. 864.

The defendant here did not have the funds upon which interest was charged, in its possession as in the case of American Propeller & Manufacturing Co. v. United States, 300 U.S. 475, 57 S.Ct. 521, 81 L.Ed. 751. The case of United States v. Los Angeles Soap Co., 9 Cir., 153 F.2d 320 is distinguishable in the manner and the purpose for which the moneys were held. Some analogy can be drawn from the decision in In re South Coast Co., D.C., 22 F.Supp. 652 in that the passage of time and the accrual of interest in that case was occasioned by the failure of the Government to furnish requested information. It was held in that case that it was the duty of the Government to take the initiative in bringing the matter to a conclusion. See also Alvord v. C. I. R., 4 Cir., 277 F.2d 713.

It is true that the theory of our tax system is that the taxpayer must pay first and litigate thereafter if he would avoid an additional tax burden but it is also true that a creditor is entitled to minimize that burden. Here the Bureau wants the payment of the tax due. Here the taxpayer wishes to pay a substantial amount to apply upon the ultimately determined indebtedness. A $50,000. payment was available for the asking. The attitude of the Association in requesting that the Bureau indicate its willingness to release a part of the funds from its lien, for the purpose indicated, does not seem unreasonable and its failure so to do would seem to be a lack of the initiative referred to in In re South Coast Co., supra. Its failure to make the request constitutes a failure to act on the part of the creditor which prevented the payment of a substantial portion of the debt. The above however does not warrant a judgment for the recovery of the interest paid during the whole of the period referred to in the complaint.

It is recognized that the Bureau, in its operations, is involved in a multitude of questions and disputes which must be resolved on different levels of taxing authority. Two months would seem to be a sufficient time within which the Bureau should have acted upon the request of May 1. Its failure so to act prevents its recovery of interest upon the sum of $50,000. for the period from July 1, 1956 to February 1, 1957 when it became evident that further delay in the acceptance of the sum offered was due to the action or inaction of the taxpayers.

The above will constitute this court's findings and conclusions in accordance with Rule 52 F.R.Civ.P., 28 U.S.C.A. It is further concluded that plaintiffs' first cause of action or claim should be dismissed and that plaintiffs are entitled to recover from the defendant a sum of money equal to the interest upon $50,000. from July 1, 1956 to February 1, 1957. The amount of the judgment is to be computed by counsel in accordance with Paragraph 4 of the stipulation. Appropriate judgment will therefore be prepared by counsel and submitted to this court for signature and entry. In the event that same cannot be agreed upon, then it may be settled on five days notice.